# Pine Mountain Manufacturing Company v. Bishop, By, etc.

(Decided October 29, 1914.)

## Appeal from Letcher Circuit Court.

1. Bill of Exceptions—Argument of Counsel.—This court will not consider alleged prejudicial remarks of counsel made on the trial of a case unless set forth in the bill of exceptions.
2. Instructions—Question for Jury.—In a suit to recover for the negligent failure of appellant's servant to wedge a false block which held laths for sawing, granting that there was evidence to support the contention that appellee carelessly lost his balance and fell against a saw, yet where it is admitted by appellee's agent that he knew of the boy's inexperience and did not tell him of the failure to wedge the block, or that it was necessary to do so, and the false block slipped at the same time it is a question for the jury to decide whether the fall was not due to negligence of appellee's servants in placing the false block.
3. Instructions.—Any unnecessary or inaccurate statements in an instruction with reference to appellant's duty and its negligent failure to perform it were off set by another instruction prejudicial to appellee in which the court told the jury that appellee in taking the employment assumed all the risk incident to it.

AUXIER, HARMAN & FRANCIS and ROSCOE VANOVER for appellant.

YOUNG & CLAY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Moody Bishop while employed and working in appellant's saw-mill, stumbled or fell across a circular saw and his right arm was cut off just below the elbow. For the injury he sued and recovered $7,500. This appeal is from that judgment. The petition charged that the appellant company was negligent in three respects: (1) In failing to furnish appellee a reasonably safe place to work; (2) In furnishing unsafe and defective machinery with which to work; and, (3) In failing to warn and instruct appellee how to work the machine and the dangers connected with it.

Appellant concedes that there were no errors in the admission or rejection of evidence, and the chief criticism is aimed at the court in refusing to give a peremptory instruction in its behalf, and for giving erroneous instructions. Also, it is insisted that the court should

have discharged the jury after appellee's counsel, in his closing argument had made certain unfair and prejudicial remarks. In other words, it is insisted that a rebuke and withdrawal of remarks of appellee's counsel did not serve to rid the case of their prejudicial effect. This last criticism may be disposed of first.

The alleged prejudicial remarks are not made a part of the bill of exceptions. They are presented to us by affidavit of counsel. The affidavits are not even mentioned in the bill of exceptions. As ruled in Southern Railway Co. v. Thacker's Admr., 156 Ky., 483, and Bannon v. Louisville Trust Co., Admr., 150 Ky., 405, the fact that appellee's counsel used the language complained of should be authenticated to us in the bill of exceptions by the lower court before we can consider whether or not they were prejudicial.

Moody Bishop was a boy nineteen years old, and had worked one day at the mill, wheeling saw-dust. Work in this dust did not suit him, and that evening he made it known that he would not return unless he was given another job. He was told to come back next morning, and the superintendent turned him over to a Mr. Mullins and directed Mullins to put him to work sawing plastering laths. Mullins was told to first instruct him in the use of the machine. Mullins took the boy and told him that he should receive from the mill at his left, and which was operated by Mullins, the strips and put them in a rack at his machine, which was called the "equalizer," and that when he had fifty laths in the rack, he should tie the bunch at each end and then shove the bundle, while contained in the rack, forward to two circular saws distanced forty-eight inches apart, and in this way the laths would be cut of equal lengths. Although the boy had never worked with this machine, the next two hours were without mishap. But it seems that in the manufacture of laths, while forty-eight inches is the standard length, it is necessary at times to cut some into thirty-two inch lengths in order to utilize all the timber. At the end of two hours Mullins had accumulated a stock of short lengths at his mill, and decided to saw this short timber into strips, and told Bishop they would begin to saw thirty-two inch laths. In this operation Mullins had been using a gauge or block made out of short pieces of timber, two inches square, and two in number, nailed together. This gauge was set into the rack thirty-two inches from the right-

hand saw and wedged tightly in place, so that one end of the laths could be held firmly against the block, and thus secure an even cut at the other end. At the time in question, Mullins put the block in place, but neglected to wedge or otherwise secure it. The boy did not know of this omission, for he had never been told that it was customary or necessary. He was merely instructed to collect fifty of these short length laths, as they came to him from the other mill, and tie them as before, and then shove them with the rack against the right-hand saw. These saws were erected on a table twelve inches higher than the floor where the boy was standing. He had gathered twenty laths into his false rack and noticed that they were beginning to work out of the rack at the right-hand side and be drawn toward the saw, and he also noticed that this was due to the loose false block, which Mullins had placed in the rack. Realizing that at best the laths would be cut diagonally and in uneven lengths, he grabbed the bunch and in trying to hold them firmly against the block, the block moved further out of place, causing him to lose his balance and topple over with his right arm on the saw.

Mullins, appellant's witness, admits that he knew of the boy's inexperience, and that he did not tell him of his failure to wedge the block, or that it was necessary to do so. We quote from his evidence:

"By Court. Q. Was it necessary to wedge this piece in there? A. All the difference it made was, those laths were all even, and in equalizing them we make the lath all one length, and when we put this piece in we had to wedge it to make it hold the lath all even, that were not even before they were put in the rack, and if you did not get them in even they would fall out and it would give you trouble in putting them back.

"Q. But it would also keep this false piece from 'wabbling?' A. Yes, sir. Q. Then, by reason of this false piece not being wedged and being 'wabbly,' caused the lath to drop down and the boy would have to push them back up? A. Yes, sir, if he cut them even * * *. Q. This boy, when you put him there, showed to be inexperienced? A. Yes, sir. Q. And you still let him go ahead with the work? A. Yes, sir. Q. Why did you not tell him about that? A. Simply from the fact that I did not have time to go around and explain all these things to him."

This statement of facts and the evidence of Mullins

seem to answer appellant's complaint of the court's failure to give to the jury a peremptory instruction in its favor. Very few of the facts are disputed. Appellant reasons that the boy carelessly lost his balance and fell against the saw. Granting that there was evidence to support that contention, it is still a question of fact for the jury to decide whether the fall was not due to negligence of appellant's servant in placing the false block.

Appellant proved by three men, among them the superintendent, that after Bishop recovered, they heard him make a statement "in which he attributed the accident to his pushing too hard against the laths and causing him to lose his balance and fall." This is not in conflict with Bishop's testimony on the trial, and does not even serve to raise a question of fact. It is evidently true that he was pushing too hard against the laths in view of the weak support they had in the way of this loose block, which the proof shows Mullins had negligently failed to wedge. In this way he did lose his balance and fall, but the negligence of appellant was the proximate cause of it, for there is nothing in the proof to show that appellee was not exercising ordinary care for his own safety, and in fact he was, as he thought, exercising the best of care to properly serve his master. That is, he was trying to save a partial bundle of laths from destruction and was unconscious that he was endangering himself in the effort.

Appellant's criticism of the number and length of the instructions perhaps is well taken, but notwithstanding this fault, we do not believe appellant has been prejudiced. At places in the instructions there are inaccurate or incomplete statements of the law. For instance, the court tells the jury, "it was the duty of defendant to furnish plaintiff with reasonably safe appliances with which to perform said labor." It is well settled that it is the duty of the employer to exercise ordinary care in this respect. But in the other instructions the court was careful to qualify every statement of the employer's duty, "by the exercise of ordinary care." In another place, the court predicates a recovery by appellee, among other things, on this statement: "Considering his inexperience and age." Appellant complains that the court in this way assumes that the boy was inexperienced and under age. These facts were proven and stand undenied. Any inaccuracy or unnecessary state-

ment in the instructions with reference to appellant's duty and its negligent failure to perform it, are cured even to the prejudice of Bishop, by another instruction in which the court tells the jury that Bishop in taking employment assumed *all* the risk incident to it. It is equally well settled that this instruction imposed upon appellee a risk that the law does not place upon him. As a matter of fact, he did not assume any risk induced or brought about by appellant's negligence. In view of this instruction, and appellee's recovery under it, we are unable to see that appellant has any grounds to complain, for on the whole the instructions were more favorable to appellant than need be.

Perceiving no error, the judgment is affirmed.