Bush, Receiver St. Louis, Iron Mountain & Southern Railway Company *v.* Jenkins.

Opinion delivered April 23, 1917.

RAILROADS—CROSSINGS BELOW GRADE—DUTY TO MAINTAIN.—A railway company is under a duty to construct and maintain highway crossings, both above and below grade, so as not unreasonably to interfere with the free use of the highway by the public.

Appeal from Chicot Circuit Court; *Turner Butler,* Judge; affirmed.

*E. B. Kinsworthy* and *W. G. Riddick,* for appellant.

1. Plaintiff was not entitled to recover as no negligence was shown and plaintiff, himself, was negligent. 33 Cyc. 276; 64 Atl. 489; 46 S. W. 343; 46 *Id.* 113; 97 Ark. 437.

2. The instructions are erroneous.

*N. B. Scott,* for appellee.

1. There was no contributory negligence by plaintiff. The question of negligence was for the jury. 100 Ark. 53; 33 Cyc. 928. The railroad had assumed the duty of repairing and maintaining this crossing. The injury was serious and the verdict is fully sustained by the evidence.

2. There is no error in the instructions. 33 Cyc. 265-6, 270-1, 925-6-7-8, note 80; 107 S. W. 642. The opening was too small in width and depth and the bad condition was due to defective construction and the jury found appellant guilty of negligence and liable for the injury.

HUMPHREYS, J. This suit was instituted in the Chicot Circuit Court on February 19, 1916, by appellee against appellant seeking to recover a thousand dollars on account of an injury received while driving a team and wagon loaded with cotton under appellant's railway track or trestle where it crosses the public highway between the towns of Eudora and Grand Lake. Appellee based his right to recover on the alleged negligent construction and maintenance of the crossing by appellant, in that the crossing was not of sufficient height to allow safe and suitable passage for the usual, ordinary traffic on the highway.

Appellant denied all the material allegations of the complaint, and by way of further answer, charged appellee with contributory negligence.

Trial was had upon the issues joined, and a verdict returned and judgment rendered in favor of appellee for $183.75.

Proper steps were taken and the cause is here on appeal.

The assignments of error insisted upon for reversal will be better understood by a short statement, in substance, of the facts.

Will Jenkins, a negro man, was employed by W. H. Stephenson on September 5, 1916, to haul a load of cotton from Eudora to Grand Lake. Five bales of cotton were on the wagon, three on the bottom across the cotton frame, and two lying lengthwise on top of the three bales. The highway approached the trestle on a slight curve or bend and gradual rise in the roadbed. When the injury occurred, the space between the roadbed and trestle was eight and a half or nine feet. At the time the trestle was built, a space of twelve feet was left between the roadbed and the trestle. In 1912, the floods washed a hole in the roadbed to the depth of twenty-five feet. It became necessary to curve the road around this hole, and in order to do so, an additional opening was made in the dump and a new wagon road was built by the railroad company, leaving a space of twelve feet between the roadbed and trestle. The traveling public complained because the new roadbed was muddy, so the railroad company put eighteen inches of cinders on the roadbed, leaving a space of ten and a half feet between the trestle and roadbed as repaired. From that time until the injury occurred, the roadbed filled in until the space between the trestle and roadbed was eight and a half or nine feet, as stated above. This space was barely sufficient to accommodate a wagon loaded with five bales of cotton in the usual way. There was not room between the top bale on a cotton wagon so loaded and the trestle, for a driver standing on the bottom bale, to lay his arm on and hold to the burlap of the top bale. Will Jenkins was not familiar with the condition there. He had never driven a wagon loaded with

cotton under the trestle. As he approached the trestle on the curve and rise, it appeared to him that he could pass under the trestle while sitting on the top bale. When his mules had passed under the trestle, he discovered his dangerous situation and got down quickly on the front bottom bale and caught the top bale with his right hand to keep from falling, and by stooping saved his head, but his right arm was caught between the top bale and trestle and seriously injured. The accident happened about 11 o'clock A. M.

This cause was sent to the jury on the theory that it is the duty of a railroad company in Arkansas to construct and maintain a public highway crossing under its tracks or trestles in a reasonably safe condition for the ordinary use of the traveling public.

It is insisted by appellant that the theory upon which this cause was submitted to the jury contravenes the law. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 118 Ark. 72, quoting from the eighth volume of American & Eng. Enc. of Law (2 ed.), p. 363, this court said: ''It is the duty of every railroad company properly to construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers so far as it can do so without interfering with the safe operation of the road;'' and quoting again from the same work on page 374, said: ''The duty of the railroad company to repair and restore a highway is a continuing one, and commensurate with the increasing necessity of the public. * * *''

Speaking of the same duty in *Chicago, R. I. & P. Ry. Co.* v. *Redding,* 124 Ark. 368, this court said: ''The manner of discharging this duty is a proper subject of statutory regulation; but the duty is not created by the statute. It exists independently of it. Our Legislature has seen proper to exercise its authority in this respect only by prescribing the elevation of crossings by designating the ratio of horizontal to perpendicular feet; but the duty exists to adapt the width of the crossing to the necessities

of the public.  We are not called upon to say, and do not decide, that the railroad company must, in all cases, make its crossings co-extensive with the roads and streets over which they are placed, but they must anticipate the reasonable demands of the public, and where the traffic requires it, the crossing must be made available for the entire width of the road or street.''

It is true that the two cases above referred to were dealing with grade crossings.  Appellant insists that a different rule should be announced concerning highway crossings below grade.  The duty imposed upon railroads to exercise ordinary care to construct and maintain highway crossings, so as not to unreasonably interfere with the free use of the highway by the public, is a common-law duty.  The general law makes no distinction between crossings at, above or below grade.  We find no distinction made by Elliott on Railroads in discussing the duties of railroads to construct and maintain railway crossings on highways, in chapter 46 on highway crossings, and chapter 49 on injuries at crossings.  Mr. Elliott places grade crossings, crossings above grade and crossings below grade in exactly the same category.

We think the better rule is to make no distinction in liability on account of the different character of crossings except where the statutes of the State expressly regulate the duties and liabilities pertaining to the one or the other.  Appellant has cited the case of *Gray* v. *Banbury*, 54 Conn. 574, in support of its contention that no duty rests upon a railroad to keep a subway crossing in repair. In that case, the borough of Banbury worked the street and raised the grade thereof after the railroad bridge was constructed across the street, by placing gravel thereon. The undisputed evidence in the case at bar shows that appellant not only constructed the trestle above the highway, but changed the roadbed and afterward repaired it by placing eighteen inches of cinders thereon.  The construction placed by the Connecticut court upon the statute requiring railroad companies to construct and maintain

all the crossings of highways in such manner as the convenience and safety of the public traveling on the highway may require, is not in accord with the rule laid down in our State.

In support of appellant's position, it also cites the case of *Metuchen* v. *Pennsylvania Railroad Company*, 71 N. J. Equity, 404. In that case the following language in a New Jersey statute was before the court for construction: "To construct and keep in repair good and sufficient bridges or passages over or under said railroad where any public or other road shall cross the same." Mr. Justice PITNEY, in declaring the obligation imposed upon a railroad by that statute, said: "I am unable to follow the very ingenious argument of the counsel for the complainant in support of his construction of that clause of the act. I think that the words *construct* and *keep in repair* apply wholly to the word *bridges*. It may be said that the railroad will, in self protection, so to speak, keep a bridge like this, which conveys the railroad over the highway, in good repair. But that consideration does not apply to the case where the bridge is erected to carry the highway over the railroad. The words *keep in repair* were intended to apply to the latter class of bridges, and do not, in my judgment, apply to the word *passages* under the railroad. This, I think, is the reasonable construction. The object of the Legislature was to prevent the railroad company from imposing upon the public any increased burden by reason of the railway crossing. Hence, where there is a crossing at grade, it is the duty of the railroad to keep in repair with proper planking, etc., so much of the highway as is immediately affected by the presence of its ties and rails." We have no such statute in this State, and the construction placed upon the New Jersey statute by that court is not applicable here. The construction of a statute is not involved in the instant case. No statute has been passed in this State imposing duties and liabilities on railroad companies with reference to the construction and main-

tenance of subway crossings, and in this State these du-
ties and liabilities are controlled by the principles of the
common law.

Aside from these two cases, the authorities are uni-
form in making no distinction as to the duties and lia-
bilities of railroads in reference to overhead, grade and
subway crossings. Under this view of the law, instruc-
tion No. 1, given by the court, clearly and correctly pre-
sented the law applicable in this case.

It is insisted, however, that instruction No. 1 should
not have been given because there was no evidence tend-
ing to show that the roadbed itself was not in a reason-
ably safe condition. The objection now made to the in-
struction by appellant was not specifically pointed out to
the circuit judge, nor do we think that the interpretation
now contended for is the meaning of the instruction. The
instruction was not aimed at the condition of the roadbed
itself, but had reference to the entire crossing as it ex-
isted when the injury occurred.

It is contended, however, that under appellee's own
testimony, he was guilty of contributory negligence, and
for that reason the cause should be reversed. It is true
that appellee tesified that he approached the bridge in
broad daylight; that he was watching it steadily as he
approached it; that there was nothing to obstruct his
view. It is also true that the clearance between the sills
of the bridge and the top bale of cotton was only one or
two inches. It must be remembered, however, that ap-
pellee was a stranger to the condition and situation at
this crossing; that on account of the change made in the
roadbed by the railroad company, the approach to the
passageway under the trestle was on a slight bend or
curve, and that there was a gradual rise in the roadbed
at that point. The conduct of appellee immediately upon
the discovery of the dangerous situation indicates that he
was on the alert. The jury might have inferred from all
the facts and circumstances in the case that appellee
made a simple mistake in estimating distances. In driv-

ing or passing under objects, the most careful and prudent man frequently overestimates the height of the object. For example, hats are knocked off and faces scratched by limbs overhanging the road on account of parties overestimating the height thereof. Many a careful, cautious farmer has had a close call and been injured when driving into a barn door. It is easier to hear noises and see objects than to measure and estimate distances.

Even if the facts are undisputed and fair-minded men could honestly draw different conclusions from the undisputed facts, it would be improper to say as a matter of law that appellee was guilty of contributory negligence. It was said in substance in *Doniphan Lumber Co.* v. *Henderson,* 100 Ark. 53, that the question of contributory negligence was a question of fact for the jury, and not a question of law for the court, if an uncertainty arose either from a conflict in testimony, or because fair-minded men might honestly draw different conclusions from the undisputed facts.

Applying the rule there announced to the undisputed facts in this case, we can not say as a matter of law that the injury was the result of appellee's own carelessness.

The judgment is affirmed.