Chicago, Rock Island & Pacific Railway Company
*v.* Wooldridge.

4-2942

Opinion delivered April 10, 1933.

*Geo. B. Pugh* and *Thos. S. Buzbee,* for appellant.
*Caviness & George, John P. Roberts* and *Evans & Evans,* for appellee.

Smith, J. Appellee, the plaintiff below, recovered a judgment for personal injuries and for damages to his automobile upon testimony substantially as follows. On November 9, 1931, at about 6 or 6:15 o'clock P. M., the plaintiff was driving west in his automobile over State Highway No. 10 from Danville to Booneville. At a point on the highway about a mile and a half west of Wayeland, he was compelled to pass under the defendant's railway track by driving his car through and between pillars or piers extending from the ground in the middle of and on each side of highway No. 10 upwards to the defendant's railway track; in other words, through an underpass. A plat was offered in evidence showing the highway, the railroad, and a creek which it crossed on a 14-panel pile trestle. These panels, which support the railroad trestle or bridge, were twenty feet wide, and the witnesses placed the distance between these panels at from six to twelve feet. The railroad there runs nearly east and west, and the highway runs north and south, running under the railroad at a right angle. This road is divided by one of these piers. The travel west usually goes to the right of this dividing pier, and that to the east is on the left, but there is some use of the right side of the road by eastbound travelers and traffic. The highway south of the railroad makes a left turn as it runs through the underpass, and a right turn as it leaves it. The curve on

the south side is sharper than that on the north. Some of the witnesses speak of the curve which plaintiff followed as he approached the railroad as a right-angle curve, but the plat referred to, which was offered in evidence by the railroad company, and two pictures, which were offered in evidence by the plaintiff, show that it is not a right-angle curve, although it is a sharp one.

The pictures show that the outside piling of each of three piers is painted with stripes resembling large barber poles. These are the piers east of the road, west of the road and the pier in the center of the road. The preponderance of the testimony is to the effect that this piling had been painted before plaintiff sustained his injury, but there was testimony that the piling had been painted subsequent to that occasion, and the jury evidently accepted that version. There was testimony to the effect that there were three warning signs along the highway south of the railroad, the one nearest thereto reading: "STOP, SOUND YOUR HORN"; but testimony was offered on behalf of the plaintiff to the effect that only one of these signs was present when plaintiff was injured, and that this was so located that the curving road kept the lights of the car from shining thereon and rendering it visible after dark. There were no lights on the bridge. The Highway Department had worked this road a few days before plaintiff's injury, and, in so doing, had scattered loose gravel at the point of the curve.

Plaintiff testified that his car had good lights and good brakes, and that he was driving 25 to 30 miles per hour, and that he had "made all of the curve excepting just a little bit, when I turned the car down the side of the underpass." He did this because the piers presented to him the appearance of a solid wall into which he was about to drive. He did not run into any of the piling which are now painted, but ran off the highway about 8 or 10 feet before he got to the underpass. He stated that he "did not strike the center pillar, nor the next one, nor the next one, but it was the third pillar down in the branch that I struck."

At the point of the curve on the left side of the road there was a railing erected by the Highway Department

to prevent speeding cars from running off the road. Plaintiff did not run into this railing, but after driving beyond it, turned to the left, leaving the road in so doing, and ran into the creek.

Nicholson, a witness for the plaintiff, testified that he lived about 200 feet west of the highway and south of the underpass, and was standing on his front porch when plaintiff drove by his house. Plaintiff was driving "something like 30 miles an hour. He did not slow down until he got, I would say, 20 or 30 feet from the underpass. I heard his wheels skid and he went on over the dump."

Vaughan, a witness for the plaintiff, testified that he lived about 90 yards from the underpass on the north side of the railroad, and that when he reached the plaintiff the latter said, "I thought I was going right into a solid wall, and gave a turn," and then his car slid in the gravel, and he lost control of it. The car was running, according to this witness, "30 to 35 miles per hour," and he stated that "the highway man had just put that gravel in a day or two before, and it was banked in there a right smart." This witness further stated that, according to measurements which he made on the following day, the middle pier was 17 or 18 feet from the outside of the track of the plaintiff's car, in other words, instead of going through the underpass to the right of the middle pier, plaintiff turned off or skidded off before reaching it and ran a distance of 4 piers into the bridge.

A Mrs. Weatherall, testifying on behalf of the defendant, stated that she was in her home, 300 yards north of the underpass on the opposite side of the railroad, and she and her husband heard from that distance the noise of the impact as plaintiff's car struck the pier. She and her husband went at once over to the scene of the collision, and she said, as they reached plaintiff's car, "He was going quite a speed," and the plaintiff answered, "Yes, mam, around 40."

The negligence charged as constituting plaintiff's cause of action is that the railway company "had failed to build, erect and maintain a reasonably safe crossing or underpass across or under its line of railway on

highway No. 10 at said point west of Waveland, Arkansas.''

The court charged the jury, without objection on the part of the plaintiff, that the railway company was under no duty to maintain lights at the underpass, and gave other instructions defining the duty of the railway company to maintain a safe crossing.

The railway company insists that no negligence on its part was shown, as it had no control of the location of the highway leading to its right-of-way, the route of the road having been recently relocated by the State Highway Department, and that it was an employee of the Highway Department, and not its own employee, who had so recently placed the gravel in the road where plaintiff's car skidded.

Without further recital of the testimony, and assuming, without deciding, that the defendant railway company was negligent in the particulars alleged, it appears more certain that the plaintiff was guilty of contributory negligence, and that this negligence was the cause of his injury. He knew he was approaching a railroad, although he had driven through this underpass on only one previous occasion and did not remember how the road divided. The railing on the left of the road was a warning that there was a curve and the consequent danger of rounding it too rapidly, even though the signs did not convey the information, either by not being seen or by not being present. Plaintiff must have known that he was on a curving road as he approached the underpass, yet he did not reduce his speed until he struck the gravel. Whatever the exact distance may have been between the panels or piers of the bridge, that space was half the width of the road, less the space occupied by the piling constituting the middle pier, and this space was ample for one to have driven through safely while exercising ordinary care. The road was level on both sides of the railroad track. When plaintiff became confused about the road he should have put his car in control, but he drove on with a carelessness which appears to us nothing short of recklessness.

The court should therefore have charged the jury, as a matter of law, that plaintiff's right to recover was

barred by his own contributory negligence, and, for this error, the judgment must be reversed, and, as the cause appears to have been fully developed, it will be dismissed.