THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. JAMES.

4-4141

Opinion delivered February 17, 1936.

*A. S. Buzbee* and *Thos. S. Buzbee,* for appellants.

*Williams & Williams* and *Leffel Gentry,* for appellee.

SMITH, J.   The instant case is not unlike that of *Chicago R. I. & P. Ry. Co.* v. *Wooldridge,* 187 Ark. 197, 58 S. W. (2d) 937.   Indeed, the similarity is such that it is controlling here.   In this case as in that, the plaintiff was driving, one an automobile, the other a truck over State highway No. 10, from Danville to Booneville; in that case at about 6:00 or 6:15 P. M., in this case between 9:00 and 9:30 P. M.   The plaintiff in each case came to the point where this highway is crossed by the track of the appellant railroad company.   The former opinion described the situation fully, except that, since the injury in the former case, the State Highway Department has relocated the State highway so that it approaches the railroad track less obliquely.   The highway now runs under the railroad tracks at a right angle, thereby reducing the danger of running into any one of the piers supporting the railroad track.

As stated in the former opinion, there is a fourteen-panel pile trestle at this place.   In the center of the underpass, which is the middle of the road, there is one of these panels or piers.   It divides the highway into two lanes, the east side of which is used by westbound traffic, and the west side by eastbound traffic.   The highway runs parallel to the railroad track on the south side until it runs under this track, after which it continues on the north side of the railroad track.   Danger signs on each side of the road give warning of the underpass and narrow road, made narrow by the pier in its center, but the curvature of the road itself gives warning to the traveller that the railroad track is being approached, and the outside piles on each side of the middle pier were painted in colors with alternate stripes like a barber pole.

The plaintiff admitted that he had bought a pint of liquor and had taken a few little drinks since leaving home that morning.   But he testified that he was not at all intoxicated.   That feature of the case is concluded by the verdict of the jury.

The plaintiff testified that his brakes and lights were in good condition, and that he was driving at a speed not

exceeding twenty-five miles per hour, and that his car was under control as he approached the railroad track. He admits that he saw the signs warning of danger, and of the underpass, but he did not realize the danger of striking the center pier in time to avoid doing so. He jammed on his brakes as quick, and as hard as he could, but struck the pier before he could stop, damaging his car and injuring himself.

The cause was submitted to the jury under instructions declaring the law to be that the railroad company was under the continuing duty of maintaining reasonably safe road crossings, whether these be surface or under or overhead crossings. But without considering the question whether the railroad company was negligent, it must be said in this case, as it was said in the Wooldridge case, *supra,* that the plaintiff driver was guilty of negligence directly contributing to his injury.

The plaintiff here had driven through this underpass on two former occasions. He knew he was approaching a railroad. The railing on the road, as well as the signs, gave a warning which he did not heed. The undisputed testimony is to the effect that there is a space of twelve feet in the clear between the center bent or pier of poles, and the adjacent ones on the right and left sides. There was ample clearance for a safe passage. There was no grade. The road is level on both sides of the railroad track, and we think it must be held here as in the Wooldridge case, *supra,* that the negligence of the driver was the proximate cause of the injury.

The case of *Bush* v. *Jenkins,* 128 Ark. 630, 194 S. W. 704, is cited as sustaining the judgment here appealed from. It was held in that case that a railroad company is under the duty to construct and maintain highway crossings, above and below grade, so as not unreasonably to interfere with the free use of the highway by the public.

That was not done in that case. The facts there stated are that: "Five bales of cotton were on a wagon, three on the bottom across the cotton frame, and two lying lengthwise on top of the three bales." This was such a load as might be reasonably expected to have been

on any highway during the cotton ginning season. A highway ran under a railroad track. When the trestle over this road was built, there had been a clearance of twelve feet, but the railroad continued to put cinders on the road until the clearance had been reduced to eight and one-half or nine feet. The driver had never before driven a wagon loaded with cotton under the trestle. The opinion recites that, "as he approached the trestle on the curve and rise, it appeared to him that he could pass under the trestle while sitting on the top bale. When his mules had passed under the trestle, he discovered his dangerous situation, and got down quickly on the front bottom bale and caught the top bale with his right hand to keep from falling and by stooping, saved his head, but his right arm was caught between the top bale and trestle and severely injured." Under these circumstances we declined to hold as a matter of law that the driver was guilty of negligence contributing to his injury.

Here a different situation exists. There was ample clearance with a wide margin for safe passage between the piers or bents. Plaintiff had only to notice where he was going, and what he was doing, and to exercise only ordinary care in driving, to pass under the railroad in safety, failure of which is negligence, and was the cause of his injury.

The judgment must be reversed, and, as the case appears to have been fully developed, it will be dismissed.