THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. PORTERFIELD.

4-5081

Opinion delivered May 30, 1938.

*Alvin S. Buzbee* and *Thos. S. Buzbee,* for appellants.

*F. D. Goza,* for appellee.

MEHAFFY, J.  The appellee filed complaint against the appellants in the Hot Spring circuit court alleging that about six miles south of Malvern the appellants' line of railroad is crossed by a public highway; that it was the duty of appellants to properly construct and maintain it in such manner that it would be safe and convenient to be crossed by appellee and the traveling public; that on July 26, 1937, the crossing was in a dangerous and unsafe condition; that appellants had carelessly and negligently permitted the dirt on the west side of the railroad to be worn away and leave the rail fully exposed, unprotected, unguarded and in an unsafe condition, and that said unsafe condition was known to appellants, or by the exercise of ordinary care, could have been known to them; that appellee, while in the exercise of ordinary care for her own safety, was driving with her husband when the automobile in which she was riding and over which she had no control came upon said crossing and, by reason of the dangerous and unsafe condition of said crossing, was caused to strike with terrific force against the rail which was exposed and unprotected; that the striking of the wheels against the rail with terriffic force caused the automobile to turn sideways and run along appellants' track for several feet; that by reason thereof appellee was thrown against the inside of the car with great force, causing her to receive severe and permanent injuries to her side, back and hips, and to rupture one of her kidneys.  She asked damages in the sum of $3,000.

The appellants answered denying all the material allegations of the complaint, and alleged that if appellee was injured at the time and place alleged, her injuries were the result of her own negligence or the negligence of the driver of the car in which she was riding.

Appellants state that they do not consider it necessary to argue the question of damages, and, therefore, do not abstract the testimony on that point.

Albert Porterfield, husband of appellee, testified in substance that he was driving the car at the time of appellee's injuries, going to Malvern; the road comes to the crossing in a circle; it hits the crossing on a long curve and the width of the rail was sticking up; the car hit the track and knocked it down the track four or five feet, killed the motor and it then ran 18 or 20 feet down the track; the road was hard and gravelly and yellow-top weeds were growing up high, up to the railroad; it was a county road and used by the general public; has been a road crossing for 15 or 20 years; when the car hit the rail it seemed to throw it down the track; it stopped on the opposite side straddle of the north rail; he lost control of the car; he was traveling about 12 miles an hour at the time and did not notice the rail; there was just a narrow place in the road where the wheels had been running over it and the weeds were worn out in these ruts; he was watching the trails; the weeds were in the center of the road about knee-high; was nothing to call his attention to the rail being uncovered until he struck it; had been traveling over this road probably two or three times a month; came to town different ways; the other road is the mail route; the road witness was on was hard and gravelly and the traffic had worn the yellow-top weeds down clean; it was not rutty or bumpy; the rail was sticking up just the height of the rails; close to the center of the road it had not been worn down, but the right-hand wheel struck this rail and threw the wheel down the track to the left about five or six feet; one side of the car jumped both rails, the other side of the car was in the middle of the track.

Pictures were introduced showing the crossing.

The appellee testified in substance that they slowed down at the railroad crossing and were going about 12 miles an hour when they hit the track; she then testified as to her injury and that the road had been fixed and the weeds mowed down since the accident.

Daniel Goodman testified in substance that he was called to go to the crossing the third day after the accident. His testimony as to the condition of the crossing and the rail is substantially the same as that of *Albert Porterfield*.

John W. Guest and A. B. Tallant both testified as to the condition of the crossing and corroborated the testimony of Porterfield.

Sylvester Grissom testified that he was section foreman and had been on that section since 1930; that there are two crossings near Landers; the old road was there when the railroad was built; this crossing is just graded up with gravel and dirt—the lower crossing; the upper road is not graded; witness is through four or five times a week; most of the traffic uses the new road—that is, the lower road; the rails are about four inches high; witness has 18 miles of track, including the yards at Malvern; he sometimes spends a week at Landers and then will not work there for another week; worked both crossings about the middle of September; threw gravel upon them; neither one is a plank crossing; there is a crossing sign at the crossing where Mrs. Porterfield was injured; still keeps the crossing sign up and people travel it once in a while; there are 50 or 75 crossings on witness' section of 18 miles.

There was a jury trial and a verdict and judgment in favor of the appellee for $1,000. The case is here on appeal.

The court, at the request of the appellee, gave the following instruction: "You are instructed that it is the duty of every railroad company to properly construct and maintain crossings over all public highways on the line of its road in such a manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road."

It is contended by the appellants that the court erred in giving this instruction, and they suggest that it was no doubt taken from a statement made in American & English Enc. of Law, (2 Ed.) Vol. 8, p. 363, and quoted in *St. Louis, Iron Mt. & So. Ry. Co.* v. *Smith*, 118 Ark.

72, 175 S. W. 415.   It is argued that the court, in the Smith case and a number of subsequent opinions, has laid down the rule that the duty required is that of ordinary care.

In the case of *Railway Co.* v. *Smith, supra,* Judge HART, speaking for the court, said: "The law applicable to cases of this kind is clearly stated in the Am. & Eng. Enc. of Law, (2 Ed.), volume 8, page 363, as follows: 'It is the duty of every railroad company properly to construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road.'

"On the same page the author states: 'The duty of the railroad to construct and maintain crossings over public highways is a matter usually regulated by statutory enactment. And a failure to regard such statutory requirements will render the railroad company liable for all injuries from such neglect of duty.' See, also, Acts of Arkansas, 1905, p. 116."

The other cases to which appellants call attention in this connection are *Bush, Receiver,* v. *Jenkins,* 128 Ark. 630, 194 S. W. 704, and *M. P. Rd. Co.* v. *Cox,* 187 Ark. 104, 58 S. W. 2d 421.

There is nothing in either of these cases relied on by appellants that in any way impairs the rule announced in the case of *Railway Co.* v. *Smith, supra.* In the first case, *Bush* v. *Jenkins,* 128 Ark. 630, 194 S. W. 704, it was contended that the instructions given at the request of the appellee ignored the right of appellant to attribute the delay in transit to an act of God instead of its negligence, and the court said: "It is true these instructions made no exceptions limiting the liability of appellant on account of unavoidable washouts in specific words; but when all the instructions given are read together, it is quite plain that the jury was permitted to render a verdict for damages, if any, resulting from the negligent acts of appellant only, and not damages resulting from an act of God."

The court also said in the last case cited, when answering the contention of appellant that instruction No. 6 told the jury that it was the duty of appellant to provide

suitable yards and necessary facilities, etc.: "The imposition on common carriers of the duty to provide necessary and suitable yards, and the facilities for caring for stock, in no way implies the burden of extraordinary care; but even if inferable from the language used, that more than ordinary care was required, the jury was precluded from drawing such an inference by the following instruction given at the instance of appellant: 'You are instructed it was the duty of the defendant to use ordinary care and reasonable diligence to handle the cattle to destination, and to provide suitable stock pens, under all the circumstances of the case.' "

We know of no case where it was held error to give an instruction to the jury defining the duty of defendant, where they are told in other instructions given by the court that there is no liability unless there was a negligent failure to perform the duty, and they were clearly told that in the case at bar.

In the case of *Payne* v. *Stockton*, 147 Ark. 598, 229 S. W. 44, this court, in referring to the statute, said: "It makes it the duty of the railroad company to construct such crossings in such a way that the approaches to the roadbed on either side shall be made and kept at no greater elevation or depression than one perpendicular foot for every five feet of horizontal distance. The section further provides that such railroad may be crossed by a good and safe bridge to be built and maintained in good repair by the railroad company.

"In construing this statute in *St. Louis, I. M. & S. Ry. Co.* v. *Smith*, 118 Ark. 72, 175 S. W. 415, the court held that it is the duty of every railroad company to properly construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road."

In the case of *M. P. Rd. Co.* v. *Bennings*, 186 Ark. 303, 53 S. W. 2d 599, it was contended that the court erred in giving the following instruction: "You are instructed that all railroad companies operating trains in the state are liable for all damages done to or stock killed

which is caused by the operation of such trains in the state." The court said that this was practically a copy of the statute, and, while the court said it should not have been given, it is stated that there is no prejudicial error in giving it. It was followed by other instructions, and when all instructions were considered together, there was no prejudicial error.

In the case of *Jacks* v. *Culpepper,* 183 Ark. 505, 37 S. W. 2d 94, the court gave an instruction defining the duty of drivers of automobiles, and the court stated: "The instruction is a clear and concise statement of the duty of any person operating an automobile upon a public highway." The court further said: "It is not abstract for the court in instruction No. 2, immediately following, about which no complaint is made, applied the law as stated to the facts in this case, if so found by the jury. The instruction does not assume that appellant was driving at an excessive rate of speed. We approved a somewhat similar instruction in *Graves* v. *Jewell Tea Co.,* 180 Ark. 980-987, 23 S. W. 2d 972."

The instruction complained about in this case clearly defines the duty of appellants, and it is immediately followed by instructions which tell the jury that no recovery can be had unless the appellants are guilty of negligence; but even if instruction No. 1 was erroneous, it was not prejudicial.

The Kentucky Supreme Court, in holding that an erroneous instruction was not prejudicial, said: "But notwithstanding this fault we do not believe the appellant has been prejudiced." *Pine Mt. Mfg. Co.* v. *Bishop,* 160 Ky. 575, 169 S. W. 1010.

Appellants say: "It may be argued that the instructions given at the request of the defendant correctly stated the law. This is true, but the instructions are in irreconcilable conflict." We do not think there is any conflict at all. Instruction No. 1 merely told the jury what the duty of appellants was.

It is next contended by appellants that the court erred in permitting attorney for the plaintiff to read § 8483 of Crawford & Moses' Digest. That section re-

346

quires railroad corporations to construct railroad crossings so as to keep them at a certain elevation. This statute was not given by the court as the law in the case, but the attorney in his argument was permitted to read it to the jury. We think this should not have been done, but certainly it could not have resulted in any prejudice to the appellants. Attorneys, in making their arguments, sometimes make arguments that have no application to the case, and we think that is true in this case; that the section read had no application, but it certainly could not have resulted in any prejudice.

The appellants do not contend that they had performed their duty in maintaining the crossing; do not argue that they were not guilty of negligence.

The law provides that the jurors shall be persons of good character, of approved integrity, sound judgment, and reasonable information. We must assume that they had, and exercised, common sense. They were repeatedly told by the court in substance that the appellee's right to recover depended on her proving negligence of the appellants. They were bound to know that this was the law, and if they were men of reasonable information, approved integrity and sound judgment, they could not have been misled by the instructions, nor by the reading of the statute by the attorney in his argument.

The judgment is affirmed.