### STEELE v. CENTRAL OF GEORGIA RAILWAY COMPANY.

LUMPKIN, J. 1. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal." And unless there be other evidence tending to establish his right to recover, he "is not entitled to a finding in his favor, if that version of his testimony the most unfavorable to him shows that the verdict should be against him." Southern Ry. Co. v. Hobbs, 121 Ga. 428.

2. Under the plaintiff's testimony and other evidence introduced by him in this case, he was not entitled to recover for an injury received while attempting to pass under a bridge over a highway, driving a wagon loaded with cotton; and a nonsuit was proper. Barfield v. Southern Ry. Co., 118 Ga. 256; W. & A. R. Co. v. Ferguson, 113 Ga. 712, and citations; Bridger v. Gresham, 111 Ga. 814; City of Columbus v. Griggs, 113 Ga. 597; Ray v. Green, 113 Ga. 920; Farmer v. Davenport, 118 Ga. 289.

3. This case does not fall within the ruling in Samples v. Atlanta, 95 Ga. 110.

4. Whether or not there was error in respect to permitting a question to be asked of a witness for the plaintiff on cross-examination, the ruling will not cause a reversal where the exclusion of the evidence can not affect the decision in regard to the grant of a nonsuit.

Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.

Argued May 17, — Decided June 14, 1905.

Action for damages. Before Judge Hammond. City court of Griffin. December 5, 1904.

Steele sued the Central of Georgia Railway Company, alleging that he had received an injury while endeavoring to pass under a bridge of that company, extending over a public highway in the city of Griffin. According to his testimony, he went to Griffin driving a wagon loaded with cotton, two bales being placed on the wagon and a third on top of them, he being seated on the top bale. He intended to cross the railway track at a certain street-crossing, but found it blocked by a train, and went further up the railroad. There were several streets at which

he could have crossed on a level with the track, but they were somewhat more distant.     Nearer was a street which passed under the railroad track, and he determined to utilize it.     He went along a street which was parallel with the railroad track, and then, at a point about one hundred yards distant from it turned into the street which passed under it.     The place where he turned toward the railroad was on a somewhat higher grade than the track.     He testified: "Where I started to go under the railroad track it was not more than thirty feet from the railroad.     When I turned to go under the bridge I was sitting on the top bale, on the edge of it, with my feet on the bottom bale. When I started down the little hill and got half way down, I saw the danger and slided down on the bottom bale below, and was pushing back with my left hand on the cotton, and had the reins in my right hand, trying to stop the mules.     My hand was caught between the beam of the bridge and the cotton.     I had the reins in my right hand.     In coming down that little hill I threw my hand up on the bale of cotton.     When I got my hand up on the cotton I was not more than twenty feet from the railroad track, half way down the little hill.     I got down off of the top bale of cotton to get out of the way of the timbers of the bridge.     I saw I was not going under, and tried to stop the mules.     I did not stop them soon enough.     When I got under the railroad track it knocked me off.     My hand got caught between the beams of the trestle and the cotton."     He was a contractor, had built bridges, and had lived in the neighborhood of Griffin for fifteen years.     In his testimony also occurred the following statements: "During that time Griffin has been my market.     I am familiar with the streets of Griffin. . . There is a street right up there that crosses the railroad track on a grade. . . The tunnel route was the nearest, nearer than the crossing above here by some one hundred or two hundred yards. I had only been under that subway one time.     I walked under it several years ago when it was first built, but I did not pay any attention to the height of it.     I have rode by the bridge several times, I don't know how many times.     I had not passed through there any other time.     I come Second street.     I had seen the bridge and knew it was there. . . I had seen the bridge frequently and was familiar with the building of county bridges.

. . I could not see that bridge good until I got in thirty feet of it, because it is down in a cut. It was below me. I was up above it. I was going above it until I got within thirty or forty feet. When I got up there I didn't know whether it was high enough or low enough, and started down. I saw it just as I started down and could not stop. I do not know that the bridge is in sight fifty or seventy-five yards up that road. It might be; I did not look to see. I would not swear a man could not get on the top of three bales of cotton and see the subway that distance. It was in the bright open daylight, ten o'clock in the morning. . . If I had remained seated on the top bale of cotton the beam would have struck me about the middle of the breast.

. . If I had had my hand in a natural position instead of up against the bale of cotton it would not have struck it then. I don't know that it entirely cleared the top bale. I think a little cotton was left on the trestle. I am not right certain about that. I do not know that two bales of cotton with one bale on top of them would clear that thing a foot or more. It will not clear it more than three or four inches. It cleared my head three or four inches. . . The left hand was the one was hurt by the trestle. I don't know whether I had it above the bale of cotton or not. I only know I was trying to get down."

A witness introduced by the plaintiff testified, that he thought a person sitting on top of a bale of cotton which rested on two others could see the subway a hundred yards before reaching it; that, from his knowledge of the place, he thought an ordinary wagon with three bales of cotton, two lying down and one on top of them, would clear the bridge about ten inches; that the subway had been in its present condition for about fourteen years, and no one had previously been injured by going under it; that the subway from top to bottom was in plain view of a person walking on the ground for two hundred yards before reaching it, following the direction which the plaintiff pursued; and that it would be obvious to the witness for two hundred yards before reaching the subway, with two bales of cotton on a wagon, that it would be dangerous to go under it. He also testified that "I think as a matter of fact it would be apparent, to an ordinarily prudent man coming down the street on top of two bales of cotton, that it was dangerous to undertake to go under that subway. It

would be apparent to a man of ordinary observance." This last statement was admitted over objection. On the close of the evidence for the plaintiff the court granted a nonsuit. The plaintiff excepted.

*Marcus W. Beck* and *Robert T. Daniel,* for plaintiff.
*Robert L. Berner* and *Hall & Cleveland,* for defendant.