26655. GEORGIA RAILROAD & BANKING CO. *et al. v.* SEWELL.

DECIDED MARCH 9, 1938. REHEARING DENIED MARCH 29, 1938.

*Neely, Marshall & Greene, W. Neal Baird, Edgar A. Neely Jr.,* for plaintiffs in error.

*Harwell & Harwell,* contra. ,

MACINTYRE, J. The petition of James Sewell, the plaintiff, alleged, paragraph 14: "That on or about March 21, 1936, petitioner was riding in a truck of the Capital Freight Lines driven by a young man named Mullins. Said truck was being driven northward on Powell Street in the City of Atlanta, said State and county, and when the said truck approached the south entrance of the railroad viaduct on said Powell Street, the truck was stopped, and petitioner and the driver got out and looked to see if the truck would clear or pass under the viaduct, and seeing that the top of the truck would clear the overhead beams of the viaduct

about 8 inches, and assuming that it would also clear at the north end of the said viaduct since it cleared at the south end, the truck proceeded northward through the underpass, but as it was proceeding out of the north end of the underpass, the top of the truck was caught by an overhead beam and stopped suddenly and violently, and petitioner was thrown against the windshield and against a metal part thereof and seriously, dangerously, and permanently injured as hereinafter stated." Paragraph 15: "That said underpass measured vertically from the beam overhead to the street at the south end 10 feet 4 inches, and at the north end 9 feet 5 inches, and thus the north end of the underpass vertically was narrower than the south end by 11 inches, and thus caused the truck to be jammed or caught between an overhead beam at the north end and the street as alleged, and suddenly and violently stopped as alleged." Paragraph 16: "That there was no warning signs to indicate or mark the height of the underpass at either the south end or north end and there was nothing to indicate the height of trucks which would clear the underpass." Paragraph 17: "That there was no warning sign at either end of said underpass or elsewhere to give warning that the underpass was narrower. vertically at the north end than the south end." Paragraph 18: "That the driver of said truck and petitioner did not know that the underpass was narrower vertically at the north end than south end, and did not know that the said truck would not clear at the north end of said underpass, and in the premises petitioner and said driver were without fault or negligence." This paragraph 18 was amended as follows: "That it was not perceptible to said driver and petitioner, [that the truck would not clear at the north end of said underpass was not perceptible] as they proceeded through said underpass on said occasion." Paragraph 18a: "That said construction and maintenance of said viaduct and underpass created a dangerous trap in said street and highway which was liable and likely to trap and injure travelers upon said street and highway as was done in this instance. Petitioner alleges that it was the duty of the defendants in constructing and maintaining said viaduct and underpass to so construct and maintain them as not to create said dangerous trap in said street and highway thereby making said street and highway unsafe for traveling public." Paragraph 18b: "That at the time of the construction of

said viaduct or bridge and underpass, which passes under said railroad tracks at said point, the said viaduct or bridge and underpass were located within the corporate limits of the City of Atlanta in Fulton County, Georgia, and said Powell Street was at the time of said construction a public street of the City of Atlanta in Fulton County, Georgia, and since said construction, said viaduct or bridge and underpass and Powell Street have been and are now within the corporate limits of the City of Atlanta in Fulton County, Georgia."

Paragraph 18c: "That said viaduct or bridge and underpass were constructed by defendants in the dangerous condition set forth in the petition, and have been since said date of construction maintained by defendants in said dangerous condition set forth in said petition." Paragraph 18d: "That the said underpass is a part of said Powell Street, and said Powell Street, over which said viaduct or bridge was and is constructed and maintained, is not a State road and has never been designated by the State Highway Department as a State road or State-aid road, and is not a county road within the meaning of the act of the General Assembly of Georgia approved August 23, 1927 (Georgia Acts 1927, page 299), and said act has no application to said viaduct or bridge and underpass, and neither said State Highway Department nor said board of commissioners of roads and revenues of said Fulton County, Georgia, have any jurisdiction as to said viaduct or bridge and underpass under the provisions of said act and have never had. Said viaduct or bridge and underpass were constructed a number of years prior to 1927." Paragraph 18e: "That the said railroad tracks of defendant cross over said Powell Street by means of said viaduct or bridge. Powell Street is approximately 4 blocks long, running north from Fair Street to Decatur Street." Paragraph 18f: "That said underpass is approximately 200 feet long and there are approximately 12 railroad tracks crossing over said underpass at said point." Paragraph 19g: "That, according to an agreement dated July 22, 1904, of defendants with the City of Atlanta, touching and permitting the construction of said viaduct and underpass, the underpass was to have a minimum clearance between the surface of the roadway (Powell Street) and the superstructure of eleven (11) feet. The defendants failed to construct said viaduct and underpass with said clearance

of eleven (11) feet, the clearance, as said viaduct was constructed, was ten (10) feet four (4) inches at the south end and nine (9) feet five (5) inches at the north end, and petitioner charges negligence against defendants in failing to construct said viaduct with a clearance of eleven (11) feet as per defendants' agreement with the City of Atlanta. If said viaduct and underpass had been constructed with said clearance of eleven (11) feet, the truck on which the petitioner was riding on said occasion would have cleared the superstructure and petitioner would not have sustained said injuries."

■ ■ This cause was sent to the jury on the theory that it is the duty of all railroad companies to "keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." ·Code, § 94-503. (Ga. Laws, 1838, Cobb 956.) There are many cases where the facts stated in the petition may be of such a character as to warrant the judge in deciding as a matter of law that "the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence." (Code, § 105-603). A failure to exercise such care is negligence which defeats his right to recover. This is not such a case. Here the underpass through which the plaintiff was seeking to traverse is "approximately two hundred feet long and there are approximately twelve railroad tracks over said underpass at said point." As constructed, it was ten feet four inches at the south end (the point where the truck entered), and nine feet five inches at the north end (the point of exit), notwithstanding the fact that the agreement of the defendants with the City of Atlanta called for a clearance of eleven feet. Under the allegations of the petition, if the viaduct had been constructed according to this agreement, or if the clearance had been the same at the exit as it was at the entrance, the injury would not have occurred. When the plaintiff approached the south entrance of the viaduct the truck was stopped and he got out and looked to see if the truck would clear or pass under the viaduct, and seeing that the top of the truck would clear the overhead beams of the south end (the point of entrance) of the viaduct about eight inches and assuming that it would clear the north end (the exit), since it cleared the south

end, he proceeded through, but an overhead beam at the north end struck the top of the truck and threw the plaintiff, who was riding in the cab of the truck, forward and caused the injury. In Hunter v. N. Y. O. & W. R. Co., 116 N. Y. 615, 619 (23 N. E. 9, 6 L. R. A. 246), it is said: "A person noticing the height of the tunnel might naturally suppose that the height at the entrance would be maintained throughout its length, and if the height was at any point reduced that notice of that fact would be given. Relying, therefore, upon what would be apparent to his observation, he was exposed to a danger of which he had no notice or information." This was quoted approvingly in Cincinnati &c. Ry. Co. v. Jones, 192 Fed. 773 (47 L. R. A. (N. S.) 483).

The conduct of the plaintiff as set forth in the petition indicates that he was on the alert, and if he should sustain the allegations of his petition as amended by competent evidence, the jury might find that though he made a simple mistake in estimating distances, yet nevertheless he was in the exercise of ordinary care. "In driving or passing under objects, the most careful and prudent man frequently overestimates the height of the object. For example, hats are knocked off and faces scratched by limbs overhanging the road on account of parties overestimating the height thereof. Many a careful, cautious farmer has had a close call and been injured when driving into a barn door. It is easier to hear noises and see objects than to measure and estimate distances," Bush v. Jenkins, 128 Ark. 630 (194 S. W. 704). Thus we think that the facts pleaded, which are admitted for the purpose of demurrer, if proved on the trial exactly as alleged, would authorize, but not require, a recovery. If the danger arising from a defect in the opening left for travelers between the surface of the highway and the overhead beam of the viaduct is obviously of such a character that a person in the exercise of ordinary care would not attempt to pass through the same while riding in a truck under the circumstances described in the petition—or in other words, if such an attempt would of itself plainly and clearly amount to a want of ordinary care and diligence, the court may so decide it as a matter of law. But while such a traveler is charged with the assumption of the ordinary risk of attempting to pass through such an opening, yet he does not assume the danger occasioned by the defect in the construction of the underpass opening, which de-

fect is unknown to him and is not discoverable by mere observation. Under the petition in this case, the question of the liability of the defendants should be submitted to the jury to determine whether the defendants were guilty of negligence not discoverable by the plaintiff in the exercise of ordinary care, to wit, whether the injury was occasioned by the attempt to traverse the underpass which had a clearance of ten feet four inches on the south end (the point of entrance), and nine feet five inches at the north end (the point of exit), and whether this was the result of an improper, unusual, and dangerous method of construction of the opening in the underpass; or whether, on the other hand, the plaintiff knew of such construction, or whether, knowing of such construction, the liability to injury was such a natural result of the construction of the underpass as to charge the plaintiff with notice thereof when he attempted to pass thereunder. The judge did not err in overruling the general demurrer. *Kent* v. *Southern Bell Telephone &c. Co.*, 120 *Ga.* 980, 983 (48 S. E. 399) ; *Samples* v. *Atlanta*, 95 *Ga.* 110, 119 (22 S. E. 135) ; Cook *v.* Boston & Lowell Ry. Cor., 133 Mass. 185; Hayes *v.* Michigan Central Ry. Co., 111 U. S. 228 (4 Sup. Ct. 369, 28 L. ed. 410) ; Solomon *v.* Philadelphia &c. R. Co., 7 Pennewill (Del.) 21 (77 Atl. 970).

The instant case is distinguishable from *Steele* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 237 (51 S. E. 438), in that in the *Steele* case the plaintiff's witness testified that he thought "as a matter of fact it would be apparent to an ordinarily prudent man coming down the street on top of two bales of cotton, [as the plaintiff was riding], that it was dangerous to undertake to go under that subway. It would be apparent to a man of ordinary observance." In the *Steele* case the plaintiff testified : "I had only been under that subway one time. . . I had seen the bridge and knew it was there. . . I had seen the bridge frequently and was familiar with the building of county bridges. . . I do not know that the bridge is in sight [from my position on the cotton] fifty or seventy-five yards up that road. It might be; I did not look to see." The instant case is also distinguishable from *Echols* v. *Atlanta, Birmingham & Coast R. Co.*, 45 *Ga. App.* 609 (165 S. E. 484). In the *Echols* case the majority of the court sustained the demurrer to the plaintiff's petition basing their finding on the *Steele* case, supra, and

stated that "the plaintiff was apparently going along a level highway at a rate of ten miles an hour and took 'only a casual look' at the bridge." Likewise the instant case is distinguishable from *Barfield* v. *Southern Ry. Co.*, 118 *Ga.* 256 (45 S. E. 282). In the *Barfield* case it was stated "there were allegations and evidence to the effect that the space left for the passage of loaded wagons under the trestle was too low and narrow; but the plaintiff was familiar therewith having driven thereunder several times." Therefore it follows that none of these cases contained the unusual feature of having one end of the bridge or culvert lower than the other, and in each of these cases the negligence of the defendant, if any, was discoverable by the plaintiff in the exercise of ordinary care.

■ ■ Paragraph 18a of the petition is as follows: "It is alleged that said construction and maintenance of said viaduct and underpass created a dangerous trap in said street and highway which was liable and likely to trap and injure travelers upon said street and highway as was done in this instance. Petitioner alleges that it was the duty of the defendants in constructing and maintaining said viaduct and underpass to so construct and maintain them as not to create said dangerous trap in said street and highway thereby making said street and highway unsafe for the traveling public." The defendant demurs to the first sentence of this paragraph upon the ground "that the said allegation is a conclusion of the pleader and constitutes matter prejudicial to the defendants." The defendant further demurs to the remainder or second sentence of the said paragraph upon the ground "that the allegations therein contained are argumentative and constitute a conclusion of the pleader and allegations prejudicial to the defendants." Having ruled with reference to the general demurrer that, under the facts as alleged in the petition, the jury had the right to say whether the underpass or viaduct, as it was alleged to have been constructed, was negligently done, and to further pass upon the question as to whether the underpass was "a dangerous trap," the general averment in this first sentence of paragraph 18a will be construed to have reference to the special facts pleaded, and as the facts upon which this averment is based are set forth in the petition, the general averment is not subject to this special demurrer. *Fuller* v. *Inman,* 10 *Ga. App.* 680 (6) (74 S. E. 287).

682

The allegation in the second sentence of said paragraph of the petition, that a legal duty devolved upon the defendant not to make said highway unsafe for public travel, is not subject to the special demurrer urged for the reason that the rest of the complaint sets forth facts relied upon which the plaintiff claims (and if proved would authorize the jury to find), raises such a duty. The special demurrer to sub-paragraph d of paragraph 19 is not meritorious for the same reason that the demurrer to paragraph 18a is not meritorious.

■ ■    Paragraph 18 of the petition as amended is as follows: Petitioner alleges, "that the driver of the truck and petitioner did not know that the underpass was narrower vertically at the north end of the said underpass, *that it was not perceptible to said driver and petitioner as they proceeded through said underpass on said occasion* (Italics ours) and in the premises the petitioner and said driver were without fault or negligence." The defendant demurred to the italicized part of this paragraph upon the ground that the allegation therein contained is a conclusion of the pleader. This demurrer is without merit. *Cedartown Cotton Co.* v. *Miles,* 2 *Ga. App.* 79, 82 (58 S. E. 289); *Austin* v. *Central of Ga. Ry. Co.,* 3 *Ga. App.* 775 (61 S. E. 998); *Charleston & Western Carolina Ry. Co.* v. *Boyd,* 5 *Ga. App.* 137 (62 S. E. 714); *Charleston & Western Carolina Ry. Co.* v. *Lyons,* 5 *Ga. App.* 668 (63 S. E. 862). Paragraph 19g is as follows: "That, according to an agreement dated July 22, 1904, of defendants with the City of Atlanta, touching and permitting the construction of said viaduct and underpass, the underpass was to have a minimum clearance between the surface of the roadway (Powell Street) and the railroad superstructure of eleven (11) feet. The defendants failed to construct said viaduct and underpass with said clearance of eleven (11) feet, the clearance, as said viaduct was constructed was ten (10) feet four (4) inches at the south end, and nine (9) feet five (5) inches at the north end; and petitioner charges negligence against defendants in failing to construct said viaduct with a clearance of eleven (11) feet as per defendants' agreement with the City of Atlanta. If said viaduct and underpass had been constructed with said clearance of eleven (11) feet, the truck on which petitioner was riding on said occasion would not have sustained said injuries." This paragraph is demurred to on the grounds that the allegations

therein contained are irrelevant and immaterial as to the plaintiff, because any breach of the contract between the City of Atlanta and the Georgia Railroad and Banking Company or the other defendants, was not made for the benefit of the plaintiff; that the allegations are too general; and that the contract, or a substantial copy thereof, should be set forth. The contract is relevant in order to show a duty owing by the defendants to the general public, and to any member of the public who sustains injury by reason of their failure to comply with the contract. This is a suit that sounds in tort, and the contract being pleaded merely as an inducement is not required to be set out with the same particularity as would have been necessary had the suit been upon the contract. The petition sounds in tort and the basis of the tort is a breach by the .defendants of a public duty which they owed to the plaintiff to make and keep the crossings of railroads over the public highway of the State reasonably safe for the traveling public. The violation of the statutory duty in Code, § 94-503, is the gist of the cause of action in this case, and where the duty is owed to or intended for the benefit of individuals composing the public, failure to perform said duty gives a right of action in favor of any one of the public injured by such failure. This special demurrer is likewise not meritorious. MacMahon v. Second Ave. R. Co., 75 N. Y. 231; Hayes v. Michigan Central Ry. Co., supra; *Freeman* v. *Macon Gas-Light & Water Co.,* 126 *Ga.* 843 (56 S. E. 61, 72 L. R. A. (N. S.) 917).

*Judgment affirmed. Guerry, J., concurs.*

BROYLES, C. J., dissenting. In my opinion, the petition, properly construed (most strongly against the plaintiff), shows that the operator of the truck, in which the plaintiff was riding, and the plaintiff, by the exercise of ordinary care, could have avoided the consequences of the defendants' alleged negligence. This being true, it follows that the general demurrer to the petition should have been sustained and the petition dismissed.

ON MOTION FOR REHEARING.

MacINTYRE, J. There being no allegation that the underpass was dark, we presume that the judge in the court below decided the case on the presumption that the underpass was not dark; and if the underpass was not dark, the facts alleged in the petition set forth a cause of action, and the jury might find, upon

684

proof of the facts definitely stated, that the difference between the height of the entrance and the exit thereof was not perceptible to the petitioner or the driver by mere observation as they proceeded through the underpass.

*Rehearing denied. Guerry, J., concurs. Broyles, C. J., dissents.*