26627. RIGGS, receiver, *v.* SCARBORO.

DECIDED MARCH 10, 1938.

*R. Lee Moore, Deal & Renfroe, Hitch, Denmark & Lovett,* for plaintiff.

*J. M. Murphy, D. C. Jones,* for defendant.

STEPHENS, P. J. D. J. Riggs, as receiver of the Planters and Peoples Fire Association of Georgia, brought suit on account against L. A. Scarboro, alleging indebtedness for several assess-

ment losses. One of the items in the account attached to the petition was as follows: "1931—Mar. 20. To assessment losses R. Lee Moore and Wyman Rocker. Rate 10 mills . . . $27.50." The other items were in the same form. Afterwards the plaintiff amended by alleging that it was incorporated on February 26, 1894, by a charter from the Secretary of State, in pursuance of the act of December 18, 1893; that the insurance to be carried on by the corporation was insuring the property of its members only against loss by fire, wind, or lightning, each member being liable for the full amount of his stock, the amount of stock being the amount of the policy or policies taken by the member, and to be paid by assessment only, whenever loss should occur; that the by-laws, rules, and regulations governing the association were fully set out in each policy of insurance that was issued, the copy attached to the amendment "being the original policy issued to H. W. Rocker, No. 2127, for $1350, on May 31, 1926, and which is made a part hereof;" that the charter of the corporation was never renewed, and after the charter expired the association became a co-partnership; that one loss mentioned in the petition was assessed at $2400, another at $35, another at $1000, and another at $1200 (names of the losers being given), and that each policyholder could multiply the amount of his own policy by the rate named in mills and see if he was properly assessed. The copy of the Rocker policy attached to the amendment contained the following provisions: "All liabilities accruing to members of this association shall be paid by pro rata assessment of all the property assigned to this association, and the members of this association shall be composed of the owners of property assigned to this association. No apportionment shall at any time be made unless it applies alike to all property insured by this association. . . It is understood by the insured, under the terms of his or her acceptance of this policy, that only the member(s) of the association who own property within the county wherein loss may occur shall be assessed to meet said loss." The defendant answered, denying all the allegations of the petition, and expressly denying that the plaintiff had any legal right to make assessments against him for losses at the time such assessments were made.

A witness for the plaintiff, who had been secretary and treasurer, testified that the insurance commissioner, in 1924 or 1925, required

the association to rewrite all their policies, that it was his "recollection and understanding" that the agent issued a new policy to every one in the company, and that this new policy included the change in it which was required by the comptroller-general; and that the change in the policy did not in any way affect their liability as far as the policyholders were concerned. Later this witness said he did not know that Mr. Scarboro had any knowledge of the change in this policy, except that he was a policyholder and on record as such, and the company had directed the agent to issue a new policy to each member to take the place of the old one; that at that time Mr. Lee was the agent of the company, and he was the only man who could issue a policy. This witness also testified: "I am telling you that that account is correct as shown on that statement, and I am telling you this, that an assessment of $27.50 at ten mills would show that Mr. Scarboro had $2750 of insurance. I do not know where the record is to show that he had a policy issued to him for $2750. The way I arrive at this amount is by the assessment and the millage, which would show the amount of insurance he had. I received that report from the agent. I took the agent's report to me for the amount of insurance each member had before each assessment was made. I put it on a book. I do not know where that record is," etc. The defendant testified that he had been served with notice to produce all the policies he had in the association, and that the two policies which he brought into court were all that he had any notice or knowledge of having in the association; that he did not know how much insurance he had in force under his policy, but he thought he had a $4000 policy; that he did not remember whether he got a notice that his policy would be reduced, and did not remember whether they issued a new policy to him for $2750, and he supposed he had a policy in the company when it went into the hands of a receiver.

The court directed the jury to find for the defendant. A motion for new trial was overruled, and the plaintiff excepted. So far as shown by the petition and the evidence for the plaintiff, the assessment rate was arrived at by dividing the amount of the loss by the total amount of insurance outstanding in the county. This rate expressed in mills was then multiplied by the amount of insurance carried by any member, to find the amount assessed against that member. For example, if the total insurance outstanding was

$500,000 and the loss $2500, the assessment rate would be .005, i. e., five mills. Thus, a member having a policy for $2000 would be assessed $10. It is obvious that to calculate an assessment on a particular member three figures are indispensable, the amount of total insurance, the amount of the loss, and the amount of the policy. Of these three figures the plaintiff proved only one, the amount of the losses.

Exception is taken to the exclusion from evidence of the Rocker policy. It does not matter whether this ruling was correct or not, as the admission of that policy could not have shown any fact enabling the plaintiff to recover. See *Steele* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 237 (4) (51 S. E. 438). The exception to the admission of the certificate of the comptroller-general as to the years for which the company was licensed to do business is also immaterial, because, if the certificate had been excluded, the plaintiff still would have failed because of the lack of evidence of the facts necessary to show the liability of the defendant. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*