**ILLINOIS CENTRAL RAILROAD COMPANY, Appellant,**

v.

**Roy FARRIS, Appellee.**

**No. 17106.**

United States Court of Appeals Fifth Circuit.

Sept. 22, 1958.

Rehearing Denied Nov. 21, 1958.

Sherwood W. Wise, James L. Byrd, Jackson, Miss., J. H. Wright, John W. Freels, Chicago, Ill., Byrd, Wise & Smith, Jackson, Miss., of counsel, for appellant.

Harold R. Ainsworth, New Orleans, La., Sam Lumpkin, Ralph L. Holland, Tupelo, Miss., Ainsworth & Ainsworth, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

In this case a van type truck eleven feet high struck an Illinois Central railroad bridge over an underpass having a clearance above the road of nine feet six inches. In an action against the railroad company the jury awarded $5,000 to the driver of the van. We affirm the judgment.

There is very little dispute as to the facts, except on one important point. About six o'clock in the evening of August 28, 1956, Roy Farris, driving a van type truck loaded with groceries, was on a gravel road approaching an underpass about two miles north of the town of Como in Panola County, Mississippi.

Farris, an experienced truck driver, knew that his truck was eleven feet high. He had a clear view of the underpass for about two hundred or three hundred yards. He was driving thirty miles an hour. He was unfamiliar with the road. Farris testified: "I took it for granted that [the underpass] was high enough to drive under * * *. I slowed up a little as I got close to it to go across or go under it, and I looked up toward it and suddenly I saw I was going to hit it, and it frightened me, I throwed on my brakes and the last I remember was the crash."

The Illinois Central Railroad Company constructed the underpass in 1922. The original plans called for a vertical clearance of twelve feet. There is a dispute as to whether the evidence reflects the railroad's contention that the underpass was in fact constructed with a clearance of twelve feet in accordance with the plans. Originally, there was a dirt road underneath the bridge. Later, Panola County gravelled the road and from time to time repaired it, until, the Illinois Central contends, the clearance was reduced to nine and a half feet. The record is not clear;[1] the plaintiff contends that there was no change in the road to any perceptible extent since the overpass was built. The county maintains the road and the approaches to the under-

pass. Since constructing the bridge and underpass, the Illinois Central has made no changes in the structure that would reduce vertical clearance.

Mississippi law allows a maximum height of twelve feet six inches for vehicles. Section 8267, Mississippi Code of 1942. There were no warning signs to indicate that vertical clearance was only nine feet six inches. No statute in Mississippi requires a railroad to post warning signs.

The defendant filed two motions for a directed verdict and, after the jury's verdict in favor of plaintiff, moved for a judgment notwithstanding the verdict. The motions were overruled. The Illinois Central now appeals.

A railroad company has an affirmative duty to maintain highway crossings[2] so as "to fulfill its obligation of affording proper security for life and property. Thus the railroad must so construct trestles as to afford reasonably sufficient clearance or headway for ordinary vehicular traffic." 3 Blashfield's Cyclopedia of Automobile Law and Practice, Sec. 1872, p. 274. This duty does not cease when a State Road Commission or other appropriate state authority approves the construction of a bridge and underpass. It is a continuing duty and the railroad must take changing conditions into consideration.[3] "As a general

---

1. T. M. Pittman, Division Engineer for the Illinois Central in 1922 testified: "I recall the plans called for a 12 foot clearance." But Frank Barnett, Panola County Supervisor, whose duty it was to see that the road was maintained, was asked: "Now is that vertical clearance about the same as it was when the underpass was constructed?" He answered: "So far as I know it's approximately the same, of course when we put in the gravel why it might have raised the road a little bit, I don't know but I do know it's practically the same as it was the first time I ever went under it."

2. Narrowly, the term "crossing" applies to an intersection of a railroad and a road or highway in the same plane. More broadly, the term includes overpasses, underpasses, bridges or other means by which one crosses from one side of a rail-

road to the other. We find it unnecessary however to construe Section 7779 of the Mississippi Code of 1942, imposing on the railroads the duty of maintaining "highway crossings" and "bridges" in "good order", because of the common law liability of a railroad to exercise due care so as not to injure the public.

3. The court charged: "The railroad, in my judgment, under the law, when it constructed this underpass assumed a continuing obligation to construct it so it was reasonably safe for the ordinary travel which went over this highway to get under this underpass safely. That, in my judgment, and I charge you that under the law it was a continuing obligation, and subject to change as traffic conditions change. * * * while I do not think the railroad had an obligation to change that underpass and make it twelve or fifteen feet deep, but if it created a

rule the duty of keeping a public crossing in repair is the same as the duty of construction * * *. [A railroad] must adjust itself to new conditions and new facilities." Contino v. Baltimore & Annapolis Railroad Co., 4 Cir., 1949, 178 F.2d 521, 524.

The Contino case is very similar to the instant case. There, an automobile truck and trailer twelve feet high collided with a railroad bridge over an underpass that had a vertical clearance of ten feet eleven inches. The State Roads Commission constructed the bridge, but the railroad approved the plans. The Court recognized that the Roads Commission, a state agency immune from liability, was primarily responsible for safe maintenance of the crossing. The Court based its holding, despite the Commission's responsibility, on the continuing liability of the railroad to furnish a safe crossing and its failure to post warning signs. The case is even stronger than the instant case, since a Maryland statute gave exclusive jurisdiction to the Commission to set up warning signals along state highways. The Court said: "The Railroad subjected itself to liability for damages from failure to give warning by joining in the construction of a crossing so dangerous that warning signs became imperative. Its liability rests upon the same duty to exercise due care as that of an employer who engages an independent contractor to do work which the employer should recognize as necessarily creating an unreasonable risk of harm unless precautions are taken. * * * The Railroad Company and the State Roads Commission did not occupy the relationship of employer and employee in this case but they did embark upon a joint enterprise so dangerous that the duty to give warning was clear and obvious from the beginning. When this duty was neglected and harm ensued, they became contributing tort feasors, each of whom was responsible for the consequences * * *."

In Hill Construction Co. v. Central Railroad Co. of New Jersey, 1933, 167 A. 757, 11 N.J.Misc. 622, state law required road obstructions to be marked. A railroad bridge over a highway was not marked. The vertical clearance was reduced from twelve feet to eleven feet five and a half inches as a result of the road having been resurfaced. The Court held that violation of the statute was not negligence per se, but that it was an incident of negligence; that the trial judge, sitting without a jury, was within its province in determining whether the defendant railroad was guilty of negligence and that the negligence was the proximate cause of the accident.

■ The appellant has cited several holdings that a railroad is not negligent in failing to keep the vertical clearance of a bridge at its original height. Gray v. Borough of Danbury, 1886, 54 Conn. 574, 10 A. 198; Shedd v. Pollard, 1937, 55 Ga.App. 828, 191 S.E. 492; Callaway v. Georgia Railroad & Banking Co., 1936, 53 Ga.App. 785, 187 S.E. 399; Shea v. Boston & M. R. Co., 1937, 88 N.H. 462, 191 A. 650. These cases turn on the absence of any duty or of any right of the railroad to change the grade of a public road. In none of them did the court consider whether the railroad was negligent in failing to post warning signs. In this case, the liability of Panola County, if it had no governmental immunity, would be clear and indisputable; as the court stated in Contino in referring to the responsibility of the Roads Commission. But it does not follow that the Illinois Central, which constructed the crossing, and is obligated to conduct its operations with due care to the public, is free from responsibility because of Panola County's duty to maintain roads and post signs. Both parties owe a duty to the travelling public, and the protection afforded one

---

danger to vehicles that could not go under a nine foot underpass such as this one was, I think it became the duty of the railroad company to put warning

signs up there. That, however, is for you gentlemen to say, if you think the defendant has met that obligation."

joint tort feasor does not affect the liability of the other joint tort feasor.

With the exception of the Contino case, the reported decisions offer little help. On principle, it seems to us that because of the railroad's continuing use of the crossing (after all, an obstruction over a highway) as well as its having created the obstruction originally, there was a continuing duty of due care to the public. We think that a railroad company, that has hundreds of bridges, overpasses, and underpasses, must know or should be held to knowledge of the fact that tall trucks and trailers are using the roads in increasing numbers. If there was any doubt, the doubt was resolved when the legislature of Mississippi in its 1942 Code put railroads on notice that trucks up to twelve feet six inches in height would use the roads— and be subjected to the dangers of overhead structures. The existence of a duty to use due care is not destroyed by a corresponding duty on the part of another.

The critical question is whether the railroad breached its duty to the travelling public in failing to put up warning signs that its crossing had a dangerously low clearance. The railroad does not answer this question by arguing that there is no necessity to give warning when the danger is obvious. The danger was not so obvious in this case that the court should have withdrawn the question from the jury. The railroad does not answer the question by showing that at the time of the accident Farris could see ahead of him for several hundred yards and that, as an experienced truck driver, he should have known that he would have too tight a squeeze to take chances. These matters show contributory negligence. The trial judge instructed the jury that Farris was guilty of contributory negligence. In Mississippi, however, contributory negligence is a ground for reduction of damages, but will not bar recovery. No doubt Panola County (or perhaps, the Mississippi Highway Commission) should have posted warning signs as part of the job of maintaining safe roads. That omission should not excuse the railroad's neglect to warn of a dangerous obstruction. We hold that the trial judge, in keeping with the historic function of the jury, correctly overruled the appellant's motions and allowed the jury to decide the critical question:

"Now, gentlemen, there is your problem. If you think the railroad company was negligent in maintaining this underpass to provide safe passage for reasonable traffic that used that road, and having known it was not safe, failed to put up a warning sign there stating what the clearance was, and that this negligence was the proximate cause of the accident and injuries alleged to have been received by the plaintiff, then your verdict must be for the plaintiff, and that verdict must be reduced by such proportion of contributory negligence as you feel the plaintiff was guilty of, as shown by the evidence you have heard."

The judgment is
Affirmed.