**Bernard RYAN and Robert Ryan, d/b/a Ryan Fruit Company, Plaintiff-Appellee,**

v.

**ST. JOHNSBURY & LAMOILLE COUNTY RAILROAD, Defendant-Appellant.**

**No. 227, Docket 26599.**

United States Court of Appeals
Second Circuit.

Argued March 20, 1961.

Decided May 3, 1961.

counsel; Clifton G. Parker, Morrisville, Vt., Atty.), for appellant.

James J. McNamara of McNamara & Larrow, Burlington, Vt., for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

In 1908, defendant, a Vermont corporation operating a short-line railroad in northern Vermont, constructed an underpass beneath its tracks in the Town of Wolcott for what is now State Route 15. In compliance with the order of the Board of Railroad Commissioners, the underpass had a "minimum clear height * * *, between the lowest surface of the railroad bridge * * * and the crown of the finished roadway" of 13 feet. Vermont makes it the duty of the State Highway Board to erect and maintain danger signs on state highways and prohibits others from doing so without the Board's consent, 19 Vermont Stat. Ann. §§ 1, 4(10), 25, 26. The Board had placed a warning sign west of the underpass indicating a 12'1" clearance for eastbound traffic and a sign east of the underpass indicating an 11'10" clearance for westbound.

The maximum limit for trucks and trailers in Vermont is 12'6", 23 Vermont Stat.Ann. § 1431. On the day of the accident, April 16, 1959, plaintiff Bernard Ryan, a resident of Saranac Lake, New York, was driving a tractor-trailer unit laden with potatoes; the top of the trailer's roof was 11'11" from the road surface. Arriving at the underpass from the west, Ryan noticed the 12'1" clearance sign. At some time during its passage, the trailer collided with the underpass; it continued through to the eastern end, thereby losing its roof. A state trooper, assisted by Ryan, took measurements of what he considered the first point where the trailer would have hit the railroad bridge; the clearance there was 11'10", over a 4" frost heave

Robert D. Rachlin, St. Johnsbury, Vt. (John H. Downs, St. Johnsbury, Vt., of

in the road. There was no evidence how long the frost heave had existed, or that defendant knew of it and of the consequent diminution in the clearance announced by the Highway Board's warning sign.

■ Defendant moved for a directed verdict at the close of plaintiff's case and again at the end of the entire case; both motions were denied. The jury rendered a verdict for the plaintiffs for $14,689 and judgment was entered thereon. Defendant moved for judgment n. o. v.; this was denied. We think it should have been granted, since there was no sufficient evidence of negligence by defendant to warrant submission of the case to the jury.

■ We do not sustain defendant's contention that the Vermont statutes with respect to warning signs relieved it as a matter of law from any responsibility for unsafe clearances of an underpass properly constructed in the first instance. Although the statutes prohibited defendant from erecting signs without the Highway Board's consent, they did not ban its communicating to the Board any knowledge it had that the latter's sign overstated the clearances. Hence evidence that defendant knew or ought to have known the clearance was less than announced would have raised an issue of negligence for the jury, see Norfolk Southern Ry. Co. v. Davis Frozen Foods, Inc., 4 Cir., 1952, 195 F.2d 662, 665.

■ Here there was no such evidence. But for the 4″ frost heave the clearance at the critical spot would have been 12′2″, an inch more than the warning sign announced;[1] and there was no evidence how long the frost heave had existed or that defendant knew or should have

known of it. Even a body that is responsible for the condition of the roadway itself is not liable for a dangerous condition, not arising from its own activities, unless it had actual or constructive notice of the danger, McDermot v. City of New York, 2 Cir., 1961, 287 F.2d 49; 2 Harper & James, The Law of Torts (1956), p. 1631. Whatever the continuing duty of a railroad with respect to underpasses may be, see 67 A.L.R.2d 1366, 1369–70, we know of nothing, either in reason or in authority, that requires a railroad constantly to patrol a highway to determine the accuracy of the warning signs with respect to clearances erected by public authority.

■ The decisions relied on by appellees deal with significantly different facts. In Contino v. Baltimore & Annapolis R. Co., 4 Cir., 1949, 178 F.2d 521, 4 Cir., 1950, 185 F.2d 932, the overpass was, from the beginning, lower than the accepted clearance and the warning sign was not illuminated so as to be visible at night when the accident occurred. In Illinois Central R. Co. v. Farris, 5 Cir., 1958, 259 F.2d 445, clearance had been reduced to 9′6″, in a state allowing a maximum vehicle height of 12′6″, yet there were no warning signs. Cf. Carr v. Chicago & Northwestern Ry. Co., 1948, 333 Ill.App. 567, 77 N.E.2d 857. Although, of course, liability is governed by Vermont law, we find nothing to indicate that the District Judge considered he was applying any special Vermont rule different from that prevailing elsewhere; hence the question of the degree of deference due by us to such a ruling, see McGettrick v. Fidelity & Casualty Co., 2 Cir., 1959, 264 F.2d 883, 886–887, does not arise.

Reversed.

---

1. Particularly in view of this fact, we see no force in the point, much emphasized by appellee, as to the difference, known to defendant, between the signs on the two sides of the underpass.