Carl WITTRUP, Appellant,

v.

CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellee.

No. 2–56466.

Supreme Court of Iowa.

March 19, 1975.

Bierman & Bierman, Grinnell, for appellant.

Davis, Johnson, Burt & Davis, and R. Jeffrey Lewis, Des Moines, for appellee.

REYNOLDSON, Justice.

Plaintiff is owner of a truck damaged when it came into collision with defendant's' railroad overpass. At close of all evidence trial court directed a verdict in defendant's favor and plaintiff appeals. We reverse and remand for new trial.

The railroad overpass spanned Second Avenue in Grinnell, Iowa. Its elevation above street level varied from approximately 8 feet 5 inches to 8 feet 10 inches. Plaintiff's boom truck was about 9 feet 6 inches in height. On the morning of August 24, 1970 it was operated by Mike Cornelius, a student of construction technology at Iowa State University then employed as a welder in plaintiff's grain handling equipment business. Cornelius was driving the truck from one job to another. He was unfamiliar with Grinnell streets and had never before driven beneath the railroad overpass on Second Avenue. The approach to the underpass was unobstructed but downhill. Cornelius observed no clearance or warning signs and thought the truck would clear until just before the collision.

In sustaining defendant's motion for directed verdict, trial court held as a matter of law defendant had no "duty" to post low clearance warning signs and that Cornelius was contributorily negligent in operation of the truck.

Appealing, plaintiff asserts the railroad had a common law "duty" to warn users of public highways of dangerously low clearances of overhead bridges, and that his driver was not contributorily negligent as a matter of law.

I. *Failure to warn.*

Defendant rightly argues there is no statute in Iowa requiring a railroad to post low clearance warning signs. But that is only the beginning of a necessary analysis.

In absence of a statutory obligation, to state there is or is not a duty is merely to state a result, a conclusion that plaintiff's interests are or are not entitled to legal protection against defendant's action or lack thereof. MacLean v. Parkwood, Inc., 247 F.Supp. 188, 191 (D.N.H.1965), affirmed 354 F.2d 770 (1 Cir. 1966).

"It is better to reserve 'duty' for the problem of the *relation between individuals* which imposes upon one a legal obligation for the benefit of the other * *. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk.

" * * * *It is a shorthand statement of a conclusion, rather than an aid to analysis itself.* * * * [I]t should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the partic-

ular plaintiff is entitled to protection." (Emphasis added.)

—Prosser, The Law of Torts § 53, pp. 324–26.

See also 2 Harper and James, The Law of Torts § 18.8, pp. 1058–61 ("Another and sounder objection to the duty analysis is that it is unnecessary and simply duplicates the inquiry into negligence." Id. p. 1060).

In short, there is a place in our negligence law for a designation of duty: as a statutorily imposed obligation or as a label to signify a relationship between the parties, e. g., owner-licensee, carrier-passenger, manufacturer-consumer, employer-employee, in which the law recognizes a potential liability for harmful conduct. But as a label it carries with it no combination to unlock this issue: whether, applying logic, sound reason, and enlightened public policy, this railroad should be immune from liability to plaintiff, if it failed to act in a situation clearly entailing foreseeable harm or damage to plaintiff and others driving through the underpass.

Defendant asserts only "the authorities" are permitted to post low clearance warning signs, citing sections 321.253 and 321.255, The Code. To follow that rationale would in instances jeopardize any relief to injured or damaged persons. A tort claim against the State unquestionably would be met with an immunity defense grounded on the theory posting of such warnings involves exercise of discretion. See Seiber v. State, 211 N.W.2d 698 (Iowa 1973).

■ We would have no difficulty holding any other nongovernmental person or corporation maintaining a rigid obstruction across a highway at a height no higher than the ceiling in the ordinary home had an obligation to warn affected motorists. There should be no reason to exempt railroads unless our statutes compel it.

Of course, if there was no "duty" to the plaintiff at eight and a half feet then there was no "duty" at four feet or even two feet. But where the obstruction is reduced to ground level we have held a *common law* obligation to warn arises. Jasper v. Chicago Great Western Railway Company, 248 Iowa 1286, 84 N.W.2d 21 (1957); see Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120 (1947). This anomaly resulting from trial court's ruling should be carefully examined in reaching our decision on appeal.

In asserting its lack of obligation to warn comports in some manner with a legislative expression the defendant apparently relies on 1) failure of the State to impose this obligation by statute and 2) imposition of an obligation to warn on the State, when it considers a warning necessary.

■ Taking up the first point, the fact certain conduct of railroads is prescribed or proscribed by statute does not mean it is immune from tort liability for other negligent conduct. In railroad law as in our motor vehicle law, tort liability can arise outside the confines of statute-mandated conduct. See Lindquist v. Des Moines Union Ry. Co., supra, 239 Iowa at 360, 30 N.W.2d at 122 ("We have always recognized the rule that negligence may be predicated upon a statute violation or upon the common law rule of 'ordinary care under the circumstances.' It may be based upon acts of commission or of omission."); Anderson v. United States R. Adm., 197 Iowa 1, 5, 196 N.W. 584, 586 (1924) ("[I]f, by reason of obstructions to the view of one passing over the crossing, it was more than ordinarily dangerous, and the exercise of ordinary care on defendant's part required that the whistle on an approaching engine should be sounded, then a duty to do so arose, notwithstanding that no such duty was imposed by statute.").

Turning to the second consideration, the defendant misplaces its reliance on statutes which require the state highway commission to adopt a manual and specifications for traffic-control devices " * * * *consistent with the provisions of this chapter* * * *," (§ 321.252, The Code) (Emphasis added) and to place and maintain such signs

(§ 321.253, The Code). Even the railroad signs and signals which the code does prescribe are not in chapter 321. See, e. g., § 478.1, The Code. And a clear distinction is made between the traffic-control devices referred to in §§ 321.252 through 321.255 and railroad signs. See § 321.259 *Unauthorized signs, signals, or markings* (" * * official traffic-control device *or any* railroad sign or signal * * * ") (Emphasis added); § 321.260 (" * * * any official traffic-control device * * * any railroad sign or signal * * * "). Compare § 321.1(62) with § 321.1(64), The Code.

■ The same defense raised by defendant in this case was rejected in Jasper v. Chicago Great Western Railway Company, supra, 248 Iowa at 1296, 84 N.W.2d at 27:

"Defendant argues it would have violated section 321.259, Code 1954, I.C.A., if it had erected a barricade or warning sign near the apparent crossing. The statute is too long to set out here in full. It provides in substance that no person shall maintain upon any highway any unauthorized sign which purports to be an official sign, traffic-control device or railroad sign or which attempts to direct traffic. 'This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information of a type that cannot be mistaken for official signs.'

"If this statute has any application here it seems clear defendant could have erected a barricade or warning sign near this apparent crossing without violating the section. The crossing on the night in question was not in fact a public one. It only appeared to be. Defendant could certainly have erected a barricade or sign to direct traffic toward the old established crossing until the construction work was completed."

If § 321.259 is applicable here, it is just as apparent this railroad could have placed a sign on its own property (either on its overpass or its grade) warning motorists of the low clearance. The great weight of author-

ity is that even an unauthorized sign is not meaningless when questions of negligence are under consideration. Geisking v. Sheimo, 252 Iowa 37, 41, 105 N.W.2d 599, 601 (1960).

Obviously the main purpose of § 321.259 is to prevent commercial interests from using imitation official signs to slow or direct traffic or to erect devices which would obscure official signs. Certainly that statute cannot excuse one who maintains a traffic hazard for failing to warn those who might be injured thereby.

■ We are not required here to determine whether defendant might be negligent for failing to warn had the state or municipal government placed and maintained a visible warning sign. This issue was determined in favor of the railroad by the Texas court in Lewie Montgomery Truck. Co. v. Southern Pacific Co., 439 S.W.2d 691 (Tex. Civ.App.1969). This leaves two Illinois decisions in support of defendant's position. The decision in older lead case, Carr v. Chicago & Northwestern Ry. Co., 333 Ill. App. 567, 572, 77 N.E.2d 857, 860 (1948), was apparently based in part on proximate cause:

"There is no negligence on the part of defendant in failing to post signs of the clearance. [Citations omitted.] There was no statutory requirement that it do so. There is no showing otherwise of any duty to do so, or as to how it could be effectively done, or *that it would have made any difference in this case.*" (Emphasis added.).

That reasoning is not persuasive in the circumstances of this case.

Over all, while not always factually on all fours, the federal appellate decisions which hold a railroad is not absolved from liability by a statute which imposes an obligation to warn on a governmental agency are more persuasive and logical. See Ryan v. St. Johnsbury & Lamoille County Railroad, 290 F.2d 350, 352 (2 Cir. 1961) ("We do not sustain defendant's contention that the

Vermont statutes with respect to warning signs relieved it as a matter of law from any responsibility for unsafe clearances of an underpass properly constructed in the first instance. Although the statutes prohibited defendant from erecting signs without the Highway Board's consent, they did not ban its communicating to the Board any knowledge it had that the latter's sign overstated the clearances."); Illinois Central Railroad Company v. Farris, 259 F.2d 445, 448 (5 Cir. 1958) ("In this case, the liability of Panola County, if it had no governmental immunity, would be clear and undisputable * * *. But it does not follow that the Illinois Central, which constructed the crossing, and is obligated to conduct its operations with due care to the public, is free from responsibility because of Panola County's duty to maintain roads and post signs. Both parties owe a duty to the travelling public * * *."); Norfolk Southern Ry. Co. v. Davis Frozen Foods, 195 F.2d 662, 665 (4 Cir. 1952) ("It was the duty of plaintiff [railroad] to give adequate warning to travelers along the highway of this dangerous low underpass, notwithstanding that the highway was constructed and maintained by the Highway Commission and a similar duty may have rested upon it. The crossing above the leval [sic] of the highway was for the benefit of the railroad as well as of the public; and, if there was danger to the public in its maintenance, the railroad as the owner in charge of the property, the presence of which constituted the danger, was under obligation to see that due warning thereof was given."); Contino v. Baltimore & Annapolis R. Co., 178 F.2d 521, 524 (4 Cir. 1949) ("The Commission * * * was directed to erect and maintain along the rights of way the necessary signs * * * and all other persons were forbidden to display any such sign * * *. The liability of the Commission, if it were not immune as an agency of the state, would be clear and indisputable; but it does not follow that the Railroad Company, which participated in the construction of the crossing, is free from responsibility

* * * [E]ven where there is no statute covering the situation, the duty of a railroad to exercise due care in its operations cannot be disputed.").

At the foundation of the federal decisions is a simple concept of black-letter law we all recognize:

"As to persons on highways or private premises near its tracks, a railroad company owes the duty to use reasonable or ordinary care to avoid injuring them. * * * What constitutes ordinary care depends on circumstances, and must be commensurate with the danger to be apprehended of inflicting injury at the particular place where it occurred."

—75 C.J.S. Railroads § 984, p. 432.

■ Nor can we discern how defendant derives support from § 321.456, The Code. The last amendment to that statute authorized highway travel by vehicles five feet higher than this overpass. The legislative afterthought that railroads and public authorities were not required to raise overpasses does not abrogate an obligation to warn of low clearance. In fact, § 321.456 put this railroad on notice of the danger inherent in its structure:

"We think that a railroad company * * must know or should be held to knowledge of the fact that tall trucks and trailers are using the roads in increasing numbers. If there was any doubt, the doubt was resolved when the legislature of Mississippi in its 1942 Code put railroads on notice that trucks up to twelve feet six inches in height would use the roads—and be subjected to the dangers of overhead structures."

—Illinois Central Railroad Company v. Farris, supra at 449.

■ The railroad's alleged negligence in failing to warn should not have been adjudicated as a matter of law.

■ II. Lastly, we hold trial court was wrong in holding plaintiff's driver contributorily negligent as a matter of law. See

Krause v. Southern Pac. Co., 135 Ore. 310, 295 P. 966 (1931). A jury could have permissibly found plaintiff's driver had never driven beneath this overpass before, he observed the overpass, saw no warning signs, and reasonably judged the truck could safely pass. While the question here is close, only in the exceptional case does a party having the burden of proof on such issue establish it as a matter of law. See Meade v. Roller, 212 N.W.2d 426, 429 (Iowa 1973); Ruby v. Easton, 207 N.W.2d 10, 15 (Iowa 1973); rule 344(f)(10), Rules of Civil Procedure.

In Georgia R. & Banking Co. v. Sewell, 57 Ga.App. 674, 679, 196 S.E. 140, 144 (1938), an overpass case, the Georgia court approvingly quoted the following from Bush v. Jenkins, 128 Ark. 630, 194 S.W. 704, 706:

> "In driving or passing under objects, the most careful and prudent man frequently overestimates the height of the object. For example, hats are knocked off and faces scratched by limbs overhanging the road on account of parties overestimating the height thereof. Many a careful, cautious farmer has had a close call and been injured when driving into a barn door. It is easier to hear noises and see objects than to measure and estimate distances."

Any person who has bumped his or her head on a car door frame or on a closet shelf would probably agree even a reasonably prudent person might misjudge a vertical height. The issue here was for the jury.

This case is therefore reversed and remanded for new trial on all issues.

Reversed and remanded.

MASON, RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ., concur.

REES, J., and MOORE, C. J., dissent.

LeGRAND, J., joins Division II of dissent.

REES, Justice (dissenting).

The majority remands this case for new trial, holding the railroad's alleged negligence in failing to post signs warning of low clearance under its overpass and plaintiff's driver's alleged contributory negligence in misjudging the clearance beneath that overpass were issues which should have been submitted to the jury. I cannot agree, and would hold trial court correctly decided both those issues as a matter of law in favor of defendant.

I. The traditional formula for the elements necessary to a cause of action founded upon negligence contemplates proof defendant was under an antecedent duty to conform to a certain standard of conduct, *i. e.,* to use care, for the protection of others against unreasonable risks. See Prosser, Law of Torts, 4th Ed. § 30, p. 143, *et seq.*; 2 Harper and James, The Law of Torts, § 18.-1, p. 1015. Ordinarily, the question whether a duty exists is "entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court." Prosser, *supra,* § 37, p. 206. See also Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir. 1972), 57 Am.Jur.2d, Negligence, § 34, p. 381.

In the instant case trial court decided the duty question presented here adversely to plaintiff, holding there is no duty under Iowa law requiring railroads to warn motorists of low clearance between railroad overpasses and the highways they span. The majority concludes the duty question was so bound up with the ultimate question of defendant's negligence that it should have been left for the jury. Relying on the foregoing authority, I believe the duty question was for the court alone, and if it interpreted the Iowa law accurately in finding no duty existed this court should affirm.

The majority concedes defendant was under no statutory duty to post signs advising motorists of low clearance beneath railroad overpasses but apparently goes on to hold that a jury applying logic, sound reasoning and enlightened public policy might none-

theless find such a duty existed even though it was not statutorily imposed. While I would be persuaded by that line of reasoning in the ordinary case, I cannot reconcile it here in the face of § 321.259, The Code. That statute provides:

"No person shall place, maintain, or display upon or *in view of* any highway any sign, signal, marking, or device which purports to be or is an imitation of or resembles an official parking sign, curb or other marking, traffic-control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic-control device or any railroad sign or signal, if such sign, signal, marking, or device has not been authorized by the state highway commission with reference to highways under their jurisdiction, local authorities with reference to streets and highways under their jurisdiction, and the Iowa state commerce commission with reference to railroad crossings, and no person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising. This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information of a type that cannot be mistaken for official signs.

"Every such prohibited sign, signal or marking is hereby declared to be a public nuisance and the authority having jurisdiction over the highway is hereby empowered to remove the same or cause it to be removed without notice." (emphasis added)

It seems obvious to me that had defendant posted a warning sign on or near the overpass in question here, it would have acted in violation of the foregoing statute. In my opinion that circumstance, coupled with the fact there is no statutory duty imposed on railroads to post warning signs, amply justified trial court in concluding as a matter of law no such duty existed, and on that ground directing a verdict for defendant.

II. I believe trial court was likewise justified in holding alternatively that plaintiff was contributorily negligent as a matter of law and on that ground directing a verdict for defendant.

The record reveals plaintiff's driver had an unobstructed view of the railroad overpass for a considerable distance down Second Avenue. Though according to his own testimony he had never been on the avenue before, the driver admitted to having increased his speed 15–20 miles per hour as he proceeded toward the bridge and said that he never slowed his vehicle or even considered the possibility he might not clear the overpass until he was under it. The driver implied he would have proceeded in the same fashion had his truck been four feet higher.

A number of other courts dealing with cases involving vehicular-overpass collisions, many on facts far less compelling than those presented here, have found drivers contributorily negligent as a matter of law for failing to judge clearance accurately. See e. g., Echols v. Atlanta B. & Q. RR. Co., 45 Ga.App. 609, 165 S.E. 484; Carr v. Chicago N. W. Ry. Co., 333 Ill.App. 567, 77 N.E.2d 857 (1948); Kutsenkow v. Chicago N. W. Ry. Co., 99 Ill.App.2d 265, 240 N.E.2d 805 (1968); Illin. Cen. RR. Co. v. Farris, 259 F.2d 445 (5th Cir. 1958); Norfolk So. Ry. Co. v. Davis Frozen Foods, 195 F.2d 662 (4th Cir. 1952); Lewie Montgomery Truck Co. v. Southern Pacific Co., 439 S.W.2d 691 (Tex. Civ.App.1969); Barfield v. Southern Ry. Co., 118 Ga. 256, 45 S.E. 282 (1903). See generally Annot., 67 A.L.R.2d 1364, 1378–1380. It might be noted in passing that of the cases cited approvingly by the majority for the proposition contributory negligence should not have been decided as a matter of law in the instant case, Bush v. Jenkins involved a situation where plaintiff's vehicle lacked clearance by but one or two inches and Georgia R. & Banking Co. v. Sewell involved a structurally defective

200-foot long underpass which provided adequate clearance at one end but not at the other, the clearance diminishing "imperceptively" along the way.

In my opinion trial court justifiably directed a verdict for defendant on either or both the grounds a) defendant was under no duty to warn motorists of low clearance beneath its overpass, b) plaintiff's driver was contributorily negligent as a matter of law.

I would affirm trial court.

MOORE, C. J., joins this dissent.

LeGRAND, J., joins Division II of this dissent.